**HOWARD FUEL, Plaintiff,**

v.

**LLOYD'S UNDERWRITERS, et al., Respondent.**

**No. 80 Civ. 654 (JES).**

United States District Court, S.D. New York.

June 11, 1984.

Dickerson, Reilly & Mullen, New York City, for plaintiff; Robert W. Mullen, New York City, of counsel.

Hill, Rivkins, Carey, Loesburg, O'Brien & Mulroy, New York City, for defendants; Caspar F. Ewig, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff, Howard Fuel Corporation ("Howard Fuel"), commenced this action pursuant to the admiralty and maritime jurisdiction of the United States, 28 U.S.C. § 1333 (1982), seeking to recover damages from its cargo insurance underwriters, Lloyd's Underwriters, *et al.* (hereinafter collectively referred to as "Lloyd's"). The case was tried before this Court, and the parties have submitted post-trial memoranda and proposed findings of fact and conclusions of law.

## FACTS

In 1972, plaintiff engaged Newport Brokerage Corporation ("Newport"), a domestic insurance broker, to secure marine insurance covering, among other things, cargo risks. Newport, acting on plaintiff's behalf, then contacted a London-based broker, Hinton, Hills and Coles Limited ("Hinton"), which in turn contacted Seascope Insurance Services Limited ("Seascope"), a "Lloyd's broker."[1] Seascope placed the cargo risk with Lloyd's. On December 7, 1982, Lloyd's issued an open cargo insurance policy covering, *inter alia*, plaintiff's fuel oil shipments. Exhibit ("Exh.") 1. The policy took effect on June 15, 1972 and continued until January 1, 1974.

On November 26, 1973, the M/T "Manuella" suffered a boiler explosion while carrying a cargo of plaintiff's fuel oil from Priolo, Italy to the Port of New York. The vessel was towed to a New York shipyard for repairs on November 28, 1973. The shipowners declared general average on November 30, 1973, and the voyage was terminated.

Howard Fuel's cargo remained on board until February 1974, when plaintiff began to discharge the fuel oil into barges for delivery to plaintiff's nearby terminal in Bayonne, New Jersey.[2] The discharge operation began on February 4, 1974 and continued until March 5, 1974. A survey conducted during the discharge operation revealed an 8,260.75 barrel shortage and water contamination in the fuel oil.[3]

Although Howard Fuel first became aware of the basis for its claim against Lloyd's while the cargo was being discharged in February and March of 1974, it apparently did not notify its United States broker, Newport, of its loss until September 1974, approximately seven months later. *See* Litvack Deposition at 19–28. Newport then advised Hinton, by letter dated September 11, 1974, that the cargo had been damaged. Exh. 12a. Hinton forwarded Newport's letter to Seascope on September 17, 1974.[4] Exh. 24, Appendix B, documents ## 1–2. Lloyd's itself did not have notice until at least two years later.[5]

---

1. A "Lloyd's broker" is a broker authorized to conduct business directly with Lloyd's by virtue of having been approved by the Committee of Lloyd's. Froude Deposition at 7–8.

2. After the casualty, the engine room was damaged and no steam was available to heat the fuel oil in the vessel's tanks until February 1974. Trial Transcript ("Tr.") at 259. The cold temperatures caused the cargo to begin congealing; however, there is no evidence that the cold in any way damaged the cargo. Plaintiff's decision to heat the fuel oil to a suitable discharge temperature and offload it onto barges appears to have been motivated by commercial considerations (namely, to avoid further delay) rather than by a desire to protect the cargo.

3. The survey was conducted by E.W. Saybolt Company, Inc. ("Saybolt"), an entity appointed by plaintiff. Its findings constitute the sole evidence in support of plaintiff's cargo claim. Lloyd claims to have been unaware of the discharge of the cargo and asserts that, had it known, it would have engaged its own surveyor to oversee the operation and determine whether there was in fact a loss. Defendants' Post-Trial Memorandum at 7, 12. Lloyd's argues that, because of inadequacies in the Saybolt survey, plaintiff has failed to prove the extent of its loss. *Id.* at 14–17.

4. The correspondence in September 1974 merely advised the various brokers in a general way that cargo damage had been incurred. Howard Fuel did not provide Newport with details of its claim until late October 1974. Exh. 24, Appendix B, document # 3. Newport sent those details to Hinton on October 30, 1974, *id.*, document # 5, which in turn forwarded them to Seascope on November 5, 1974. *Id.*, document # 6.

5. Seascope, for reasons not revealed at trial, did not promptly inform Lloyd's of the claim. On the record before this Court, it is not entirely clear when Lloyd's learned of the cargo loss or even how it learned of it. Phillip A. Froude, a member of the Lloyd's syndicate that underwrote plaintiff's policy, stated that Lloyd's first received notice of plaintiff's claim on June 8, 1978. Froude Deposition at 29–30. Other evidence, however, suggests that Lloyd's knew of the claim as early as November or December 1976. *See* Exh. G (Letters dated January 7, 12, 15 and 17, 1977); Exh. 24, (Attachment labelled "Exhibit 4"); Litvack Deposition at 59–60. Although the issue of whether Lloyd's first received notice in 1976 or in 1978 is not material to the resolution of this case, the Court finds that Lloyd's knew of plaintiff's claim by December 1, 1976. That conclusion is based on Lloyd's admission, in its answer, that "a claim

When presented with plaintiff's claim for cargo shortage and other expenses,[6] Lloyd's refused to pay and this action ensued. Lloyd's argues that Howard Fuel may not recover its loss because: (1) it failed to provide immediate notice of the loss; (2) it failed to request that it be "held covered" under the policy after the voyage was terminated; (3) it failed to protect Lloyd's subrogation rights; and (4) it failed to prove its damages.

## DISCUSSION

■ Lloyd's argues that Howard Fuel is barred from recovering because it breached the provision of the policy requiring immediate notice of loss.[7] Under New York law,[8] noncompliance with a notice provision in an insurance policy bars the claim unless the insured can demonstrate that it was not reasonably possible to give notice within the prescribed time and that notice was provided as soon as was reasonably possible. *Baltic Shipping Co. v. Maher Termi-*

nals, Inc., 1980 A.M.C. 410, 414 (S.D.N.Y. 1979); *Deso v. London & Lancashire Indemnity Company of America*, 3 N.Y.2d 127, 130, 143 N.E.2d 889, 891, 164 N.Y.S.2d 689, 691 (1957); see *Neptune Lines, Inc. v. Hudson Valley Lightweight Aggregate Corp.*, 1973 A.M.C. 125, 134 (S.D.N.Y. 1972). Moreover, the claim is barred regardless of whether or not the insurer has been prejudiced by the failure to give timely notice.[9] *Security Mutual Insurance Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 440, 293 N.E.2d 76, 78, 340 N.Y.S.2d 902, 905 (1972); see *Baltic Shipping Co. v. Maher Terminals, Inc.*, 1980 A.M.C. at 414.

■ Howard Fuel has failed to demonstrate that it was not reasonably possible to provide Lloyd's with notice immediately upon learning of its cargo loss, or that notice was provided as soon as was reasonably possible. Indeed, plaintiff learned of its claim in February or March 1974 and

was filed with the underwriters on or about 12/1/76," para. 8, and the representation by its counsel that there is no dispute as to whether Lloyd's knew of the claim "as of 1977." Tr. at 144.

**6.** In addition to its claim for $80,129.28 in cargo damages, Howard Fuel claimed a total of $43,-979.57 for expenses incurred in connection with the discharge operation. That amount comprised heating costs, barging expenses, and survey charges. Exh. 24, Appendix B, document # 3.

**7.** The applicable policy clause states, "Notice of Loss: If any loss occurs under this policy, the Assured shall give immediate notice to Underwriters, or their representative." Exh. 1. The Court notes, as a preliminary matter, that none of the brokers involved in this transaction were representatives of Lloyd's within the meaning of this provision. *See* Froude Deposition at 38–39.

**8.** In a case involving a marine insurance contract, state law governs unless there is a well-settled federal admirality rule applicable to the particular issues raised by the case. *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 316–21, 75 S.Ct. 368, 371–74, 99 L.Ed. 337 (1954); *Ionian Shipping Co. v. British Law Insurance Co.*, 426 F.2d 186, 190 (2d Cir.1970); *Purofied Down Products Corp. v. Travelers Fire Insurance Co.*, 278 F.2d 439, 441 n. 1 at 441–42 (2d Cir.1960). No such well-established rule

exists regarding the interpretation of a notice provision in a policy. *Granite State Minerals, Inc. v. American Insurance Co.*, 435 F.Supp. 159, 164 (D.Mass.1977). Applying federal choice of law principles, *Navegacion Goya, S.A. v. Mutual Boiler & Machinery Insurance Co.*, 1972 A.M.C. 650, 653 (S.D.N.Y.1972), the Court concludes that New York law governs this dispute. Plaintiff is a New York corporation, and the policy was issued through its New York broker, Newport. The only other law that might arguably apply is English law; however, no party has sought its application, and any argument that it governs this action is therefore waived. Fed.R. Civ.P. 44.1; *see Clarkson Company Ltd. v. Shaheen*, 660 F.2d 506, 512 n. 4 (2d Cir.1981), cert. denied, 455 U.S. 990, 102 S.Ct. 1614, 71 L.Ed.2d 850 (1982); *Wachs v. Winter*, 569 F.Supp. 1438, 1443 (E.D.N.Y.1983) ("When both parties have been silent on the issue of which law to apply, it can be said that they have acquiesced in the application of the forum law.").

**9.** Although such a showing is not required, Lloyd's has demonstrated prejudice in that plaintiff's failure to provide prompt notice of its loss prevented Lloyd's from appointing its own surveyor to investigate the claim and assess the extent of the alleged damage. Froude Deposition at 30–31, 34–35; *see Granite State Minerals, Inc. v. American Insurance Co.*, 435 F.Supp. 159, 164 (D.Mass.1977); *Steinbach v. Aetna Casualty and Surety Co.*, 81 A.D.2d 382, 389, 440 N.Y.S.2d 637, 642 (1st Dep't 1981).

Lloyd's was not notified until at least two years later. It follows that plaintiff's claim is and should be barred.

■ Plaintiff contends, however, that Lloyd's had actual notice of plaintiff's cargo losses because it knew of the boiler explosion and the subsequent declaration of general average.[10] That contention is not supported by the evidence. The fact that an engine room casualty had occurred and that the voyage was being terminated did not afford Lloyd's with actual notice that cargo damage had been sustained.

Howard Fuel also argues that Lloyd's received notice of its loss under the policy when it was notified, in January 1974, that the fuel oil was a "solid mass" and was being heated to a suitable discharge temperature. That claim is untenable. Nothing in plaintiff's communication to Lloyd's indicated that the cargo was damaged. *See* Froude Deposition at 24–27. Furthermore, plaintiff's letter was sent prior to the commencement of the discharge operations, before Howard Fuel itself discovered any loss or damage to the fuel oil. It is ludicrous to suggest that Lloyd's was chargeable with actual knowledge of a loss which even the plaintiff did not know had occurred.

■ Plaintiff further claims that Lloyd's is somehow estopped from asserting lack of notice as a defense because it allowed the results of the Saybolt survey to be used to reduce its liability for plaintiff's general average contribution.[11] Plaintiff, however, has offered no evidence to establish that Lloyd's received the results of the survey at a time when plaintiff was still capable of complying with the notice requirement.[12] Therefore, plaintiff has not shown that its failure to give timely notice was in any way based upon Lloyd's use of the survey in connection with the general average adjustment. Since plaintiff did not rely upon Lloyd's conduct in failing to give notice, and since plaintiff has demonstrated no prejudice arising out of any conduct by Lloyd's, there is no basis upon which to estop Lloyd's from asserting the defense of untimely notice.

■ The Court likewise rejects plaintiff's argument that Lloyd's waived the defense of untimely notice because it investigated plaintiff's claim for six months before disclaiming liability on that basis. *See* Plaintiff's Post-Trial Brief at 10–12. Howard Fuel cites no facts indicating that a six month delay in fact occurred. Furthermore, assuming that there was such a delay, plaintiff's waiver defense must fail. First, Howard Fuel has presented no facts showing that Lloyd's delay was unreasonable under the circumstances. *See Cohen v. Atlantic National Insurance Co.*, 24 A.D.2d 896, 896, 264 N.Y.S.2d 807, 809 (2d Dep't 1965). Second, merely proceeding with an investigation of a claim before objecting to untimely notice does not constitute a waiver of an insurer's right to disclaim liability. *Standard Accident Insurance Co. v. Cochardo*, 1 Misc.2d 1029, 1031, 152 N.Y.S.2d 645, 647 (Sup.Ct.1954),

---

10. Lloyd's does not dispute that it was aware of the explosion and the general average declaration very soon after the casualty. Tr. at 22, 147–48; *see* Exh. 8; Froude Deposition at 27–28.

11. Under the terms of the policy, Lloyd's was obligated to pay plaintiff's contribution to general average. Exh. 1. It did so on November 11, 1979 in the amount of $23,068.17. Since the amount of plaintiff's contribution depended on the value of the cargo, if the cargo were lost or damaged, its value was diminished and Lloyd's obligation under the policy was reduced.

The testimony at trial and statements by counsel for both parties indicate that the general average adjustment did take into account the cargo shortage claimed by plaintiff. Tr. at 229–36; Exh. 24 (Attachment labelled "Exhibit 3"); Froude Deposition at 103. The Court, however,

is at a loss to find support for these statements and testimony in the underlying documents. The adjustment for cargo loss does not appear in the general average statement itself, Exh. 15a (dated July 18, 1978), or the addendum to the general average statement. Exh. 15b (dated October 5, 1979). Both documents fix the weight of the cargo as 16,241.397 metric tons—the same weight as appears in the bill of lading. Exh. 3. It is therefore not certain that the Saybolt survey was in fact used in connection with the general average adjustment and that Lloyd's received a benefit thereby.

12. Indeed, Lloyd's *paid* plaintiff's general average contribution on November 11, 1979—over five and one half years later.

*aff'd,* 2 A.D.2d 631, 152 N.Y.S.2d 648 (3d Dep't 1956).[13]

■ Howard Fuel next contends that Seascope was Lloyd's "de facto agent" and that, since Seascope's notice in September 1974 constituted constructive notice to Lloyd's, plaintiff did not breach the terms of the policy. Plaintiff's Post-Trial Brief at 2–5. That argument lacks merit for two reasons. First, an insurance broker is the agent of the *insured,* not the insurance company, and notice to an insurance broker, absent exceptional circumstances not here present, is not notice to the insurer. *See Security Mutual Insurance Co. v. Acker-Fitzsimons Corp.,* 31 N.Y.2d at 442 n. 3, 293 N.E.2d at 79 n. 3, 340 N.Y.S.2d at 907 n. 3; *Gabriel v. Attigliato,* 60 Misc.2d 536, 303 N.Y.S.2d 399, 401 (Sup.Ct.1968); *Curreri v. Allstate Insurance Co.,* 37 Misc.2d 557, 560, 236 N.Y.S.2d 719, 723 (Sup.Ct.1963). Furthermore, plaintiff has offered no evidence to support its claim that Seascope was Lloyd's real or apparent agent.[14]

Second, even if Seascope's notice of plaintiff's loss could be imputed to Lloyd's, that notice was itself untimely. Seascope did not receive notice of the alleged cargo damage until September 1974, approximately seven months after plaintiff first learned of it. Plaintiff has offered no explanation for its delay. Since it was reasonably possible for Howard Fuel to have provided notice sooner, this seven month delay in itself violates the requirement of immediate notice under the policy. *See Baltic Shipping Co. v. Maher Terminals,* 1980 A.M.C. 410, 414 (S.D.N.Y.1979); *Neptune Lines, Inc. v. Hudson Valley Lightweight Aggregate Corp.,* 1973 A.M.C. 125, 134 (S.D.N.Y.1973); *see also Granite State Minerals, Inc. v. American Insurance Co.,* 435 F.Supp. 159, 164 (D.Mass.1977).[15]

### CONCLUSION

The foregoing shall constitute the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). Defendants are directed to submit a final judgment in accordance with the foregoing, on notice, within fifteen (15) days of the date of this decision. Each party shall bear its own attorneys' fees.

It is SO ORDERED.

---

**13.** To the extent that plaintiff asserts an estoppel based on the six month delay, that argument also lacks merit. Howard Fuel has failed to demonstrate that it suffered any prejudice from the alleged delay. *See Standard Accident Insurance Co. v. Cochardo,* 1 Misc.2d 1029, 1031, 152 N.Y.S.2d 645, 647 (Sup.Ct.1954), *aff'd,* 2 A.D.2d 631, 152 N.Y.S.2d 648 (3d Dep't 1956). Lloyd's conduct did not occur during the period of time when plaintiff's notice under the policy would have been timely.

**14.** Certain documents submitted by plaintiff, *see* Appendix A to Plaintiff's Post-Trial Brief, tend only to suggest that Seascope (which is not a defendant here) might not have been acting in the best interests of Howard Fuel in carrying out its responsibilities as plaintiff's broker; they by no means establish the existence of an agency relationship between Seascope and Lloyd's.

**15.** Since the Court has concluded that plaintiff's claim is barred because of its failure to provide timely notice of loss, it is unnecessary to address Lloyd's additional arguments.