**Resat S. KELES, Plaintiff,**

v.

**YALE UNIVERSITY, Dr. Katepalli R. Sreenivasan, and Dr. Gary Haller, Defendants.**

**No. 93 Civ. 5845 (JES).**

United States District Court, S.D. New York.

June 8, 1995.

---

**14.** As noted, this sum is subject to the NYNEX lien.

**15.** This award is also subject to the NYNEX lien.

Morgan Kennedy, New York City, for plaintiff.

Bodian & Eames (Robert I. Bodian, of counsel), New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Resat S. Keles brings this action for, *inter alia,* breach of contract, breach of an educational agreement and common law fraud. Defendants Yale University ("Yale"), Dr. Katepalli R. Sreenivasan and Dr. Gary Haller move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and for sanctions pursuant to Rule 11.

### BACKGROUND

At all times pertinent to this action, Dr. Katepalli R. Sreenivasan was a professor in the Department of Mechanical Engineering at Yale. Affidavit of Dr. Katepalli R. Sreenivasan Sworn to November 19, 1993 ("Sreenivasan Aff.") ¶ 1. By letter dated October 16, 1987, plaintiff Resat S. Keles contacted Dr.

Sreenivasan regarding the graduate program at Yale. *Id.* ¶ 2, Exh. A. By letter dated October 23, 1987, Dr. Sreenivasan invited Keles to submit a formal application for admission to the graduate school. *Id.* ¶ 2, Exh. B.

In or about November 1987, Keles submitted a formal application for admission to the graduate school for the 1988–89 academic year.[1] Affidavit of Dr. Gary Haller Sworn to November 22, 1993 ("Haller Aff.") ¶ 4, Exh. F. On March 3, 1988, the graduate school rejected the first application. *Id.* In or about December 1988, Keles submitted a second formal application for admission to the graduate school for the 1989–90 academic year.[2] Haller Aff. ¶ 4, Exh. G. On February 17, 1989, the graduate school rejected the second application. *Id.*

By letter dated March 22, 1990, Keles submitted additional documentation to Dr. Sreenivasan and expressed concerns regarding his status at Yale. Sreenivasan Aff. ¶ 3, Exh. C. In addition, Keles enclosed a copy of an outstanding offer to the graduate program at the University of Illinois. *Id.* ¶ 4. By letter dated March 29, 1990, Dr. Sreenivasan advised Keles that there were no openings in the graduate school at Yale. *Id.* ¶ 4, Exh. D. However, Dr. Sreenivasan offered to accept Keles as a laboratory research assistant for the 1990–91 academic year. *Id.* Dr. Sreenivasan added that, "if things work[ed] out well at Yale," he would recommend Keles for admission to the graduate school for the 1991–92 academic year. *Id.* In the end, however, Dr. Sreenivasan advised

Keles that his "best course of action might be to accept the University of Illinois offer." *Id.*

In September 1990, Keles began working as a laboratory research assistant.[3] Defendants' Statement Pursuant to Local Rule 3(g) dated July 13, 1994 ("Deft. 3(g) St.") ¶ 8; Sreenivasan Aff. ¶ 5. Thereafter, because Keles was unable to conceive an independent research project, Dr. Sreenivasan assigned him to work on a research project supervised by David Kyle, a graduate student. Deft. 3(g) St. ¶ 8; Sreenivasan Aff. ¶ 5; Kyle Aff. ¶¶ 2–4. The research project, which concerned the suppression of vortex shedding in the wake behind a circular rod, was of no applied or economic value. Deft. 3(g) St. ¶ 8; Sreenivasan Aff. ¶ 14; Kyle Aff. ¶ 4. Shortly thereafter, Kyle and other research assistants complained that Keles lacked requisite mathematical and physics skills and familiarity with basic laboratory instrumentation. Deft. 3(g) St. ¶ 9; Sreenivasan Aff. ¶ 6; Kyle Aff. ¶ 3; Johnson Aff. ¶ 2.

In the Fall of 1990, Keles submitted a third formal application for admission to the graduate school for the 1991–92 academic year. Haller Aff. ¶ 4, Exh. H. Thereafter, Keles forwarded a proposed recommendation to Dr. Sreenivasan for his signature.[4] Sreenivasan Aff. ¶ 7, Exh. E. The proposed recommendation characterized his performance as satisfactory and recommended either a Yale fellowship from the Dean's funds or assistance from Dr. Sreenivasan's funds. *Id.* Dr. Sreenivasan did not sign the proposed recommendation because he did not consider

---

1. Although submitted in November 1987, the first application is erroneously dated November 24, 1988. The graduate school stamped the application as received on November 25, 1987.

2. The second application, like the first application, bears the date November 24, 1988 on the signature page. The second application may be a renewal of the first application, as the signature page of the second application appears to be a photocopy of the signature page of the first application. Deposition of Resat S. Keles dated June 2, 1994 ("Keles Dep.") at 40–48.

3. According to Dr. Sreenivasan and certain research assistants, the work provided Keles an opportunity to conduct research, to learn new material and to enhance his chances for admis-

sion to the graduate school. Sreenivasan Aff. ¶ 5; Affidavit of Arthur Johnson Sworn to November 19, 1993 ("Johnson Aff.") ¶ 3; Affidavit of Dr. David Kyle Sworn to November 19, 1993 ("Kyle Aff.") ¶ 5.

4. Despite documentary evidence to the contrary, Keles claims that he did not draft or submit the proposed recommendation. Affidavit of Resat S. Keles Sworn to December 20, 1992 ("Keles Aff.") ¶ 41; Keles Dep. at 78–80. Instead, Keles claims that he submitted a model letter of recommendation for signature. Keles Aff. ¶ 41, Exh. M. In support of that claim, Keles has submitted an exhibit which does not even constitute a letter of recommendation. In any event, it is undisputed that Dr. Sreenivasan did not provide a letter of recommendation for Keles. Keles Dep. at 80–81.

Keles a viable candidate for the graduate school. *Id.* On March 3, 1988, the graduate school rejected the third application. Haller Aff. ¶ 4, Exh. H.

On July 5, 1991, Dr. Sreenivasan and Keles negotiated an informal agreement concerning Keles's continued work as a research assistant.[5] Keles Aff. ¶ 12, Exh. C. At that time, Dr. Sreenivasan and Keles agreed that Keles must pass an area examination by December 1991 or the Spring of 1992. Plaintiff's Statement Pursuant to Local Rule 3(g) dated August 15, 1994 ¶ 12; Deft. 3(g) St. ¶ 12; Sreenivasan Aff. ¶ 10; Keles Dep. at 75. An area examination, which is ordinarily administered to graduate students, is employed to assess a student's preparation for research in a chosen field of study. Keles Aff. Exh. F; Sreenivasan Aff. ¶ 13.

By letter dated August 14, 1991, Dr. Sreenivasan formalized the agreement which permitted Keles to continue working through the Spring 1992 semester. Sreenivasan Aff. ¶ 9, Exh. F. The agreement provided that, "subject to the availability of research money," Keles would receive "a salary equivalent to that of a graduate student" during that time. *Id.* The agreement also provided that Keles could register for one course per semester during that period. *Id.* Dr. Sreenivasan also indicated that an area examination was unnecessary. *Id.* In the end, however, Dr. Sreenivasan advised Keles to apply to other graduate schools so that he would not be "stuck with lack of opportunities". *Id.*

In June 1991, the graduate school accepted Keles as a special student for the 1991–92 academic year. Keles Aff. ¶ 8, Exh. B. In addition, Dr. Sreenivasan authorized research funds to pay for a course in the Fall of 1991. Sreenivasan Aff. ¶ 15. Dr. Sreenivasan alleges that, during the semester, Keles failed to attend a number of classes. *Id.* As a result, Dr. Sreenivasan allegedly declined to authorize additional research funds for a course in the Spring of 1992. *Id.* According to Keles, he attended the classes and achieved good grades. Keles Aff. ¶ 38. In any event, by letter dated March 10, 1992, the graduate school notified Dr. Sreenivasan that Keles could not receive a salary because

he was no longer an enrolled student. Haller Aff. ¶ 8, Exh. I. It is undisputed that Keles was not paid for the last three months of the Spring 1992 semester. *Id.* ¶ 7.

Thereafter, Keles submitted a fourth formal application for admission to the graduate school for the 1992–93 academic year. By letter dated October 17, 1991, the graduate school declined to consider the fourth application in accordance with its stated policy, which permits three applications per individual. Haller Aff. ¶ 4, Exh. C. In a follow-up letter, dated January 7, 1992, the graduate school explained the rationale of its policy. *Id.* ¶ 4, Exh. D. By letter dated February 11, 1992, the graduate school also explained the reasons underlying the three earlier rejections. *Id.* ¶ 4, Exh. E.

At all times pertinent to this action, Dr. Gary Haller was Chair of the Council of Engineering and Professor of Chemistry and Chemical Engineering at Yale. Haller Aff. ¶ 1. By letter dated January 20, 1992, Keles urged Dr. Haller to form a committee to investigate, *inter alia*, the graduate school's refusal to consider the fourth application. *Id.* ¶ 2, Exh. A. Based upon his thorough investigation of the matter, Dr. Haller concluded that the appointment of an investigative committee was unnecessary and that Keles's allegations were baseless. *Id.* ¶ 3. By letter dated February 20, 1992, Dr. Haller advised Keles accordingly. *Id.* ¶ 3, Exh. B.

On August 19, 1993, Keles commenced the instant action. In his first cause of action, Keles claims that defendants breached an alleged contract covering his laboratory work by failing to pay his $1,100 monthly salary from September 1990 through September 1991 and from February 1992 through May 1992. Verified Complaint ¶¶ 11–31. In his second cause of action, Keles claims that defendants breached an implicit "educational agreement," under which he was admitted to the graduate school, by failing to administer an area examination and to appoint a doctoral committee. *Id.* ¶¶ 32–63. In his third cause of action, Keles claims that Dr. Sreenivasan fraudulently induced him to work in

---

**5.** Despite Dr. Sreenivasan's notes, the terms of this informal agreement are somewhat unclear.

the laboratory by maintaining that Keles was admitted to the graduate school, and that he would administer an area examination before a doctoral committee. *Id.* ¶¶ 64–83. In his fourth cause of action, Keles claims that defendants committed a "grievous wrong." *Id.* ¶¶ 84–109. Keles seeks punitive damages on all claims. *Id.* ¶¶ 31, 63, 83 & 109.

During at least two preliminary conferences, the Court warned counsel for Keles, Morgan Kennedy, that the instant action did not appear to be well-grounded in fact. On November 22, 1993, defendants filed a motion for summary judgment and a motion for sanctions. By order dated May 12, 1994, the Court denied the motions without prejudice and directed defendants to conduct a deposition of Keles. Following the deposition of Keles, defendants filed the instant motion for summary judgment and motion for sanctions. For the reasons that follow, the motion for summary judgment is granted in part, and the motion for sanctions is granted. The Court also dismisses the remaining contract claim which, even if proven, cannot meet the $50,000 threshold for subject matter jurisdiction based upon diversity of citizenship.

## DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted where the moving party demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

■ Where, as here, subject matter jurisdiction is predicated upon diversity of citizenship,[6] it is well-established that a district court must apply the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In their

respective legal memoranda, however, the parties do not raise the issue of choice of law, *i.e.,* Connecticut law versus New York law, and cite only New York authorities. Where the parties fail to raise the issue of choice of law, the Court need not raise the issue *sua sponte,* and the parties are deemed to have acquiesced in the application of the law of the forum. *See Maine Drilling & Blasting, Inc. v. Insurance Co. of North Am.,* 34 F.3d 1, 4 n. 1 (1st Cir.1994); *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.,* 779 F.2d 1281, 1284–85 (7th Cir.1985); *Montana Power Co. v. Public Util. Dist. No. 2,* 587 F.2d 1019, 1022 n. 1 (9th Cir.1978); *see also Clarkson Co. v. Shaheen,* 660 F.2d 506, 512 n. 4 (2d Cir.1981) (involving foreign law issue); *Howard Fuel v. Lloyd's Underwriters,* 588 F.Supp. 1103, 1106 n. 8 (S.D.N.Y.1984) (same). As a result, the Court will apply the substantive law of New York to the facts of this case.

### A. *The Educational Agreement Claim*

■ Keles claims that defendants breached an implicit "educational agreement," pursuant to which he was admitted to the graduate school, by failing to administer an area examination and to appoint a doctoral committee. Verified Complaint ¶¶ 32–63. Since this claim relates to an educational institution, the Court must consider the purported contract claim in light of the policies and customs of the particular institution, as well as the oral and written expressions of the parties, *see Banerjee v. Roberts,* 641 F.Supp. 1093, 1105–06 (D.Conn.1986), which must establish a meeting of the minds regarding the material elements of the alleged contract. *See Ansorge v. Kane,* 244 N.Y. 395, 398, 155 N.E. 683 (1927); *Brands v. Urban,* 182 A.D.2d 287, 587 N.Y.S.2d 698, 700 (2d Dep't 1992) (citations omitted).

■ In this case, the breach of contract claim is refuted by indisputable documentary evidence. In March 1990, when Dr. Sreenivasan offered Keles a research assistance position, he advised Keles to accept the offer

---

6. At the commencement of this action, Keles was a Turkish citizen residing in New York, Complaint ¶¶ 2–3, Dr. Sreenivasan was an Indian citizen residing in Connecticut, *id.* at ¶ 4, and Dr. Haller was an American citizen residing in Connecticut, *id.* at ¶ 5.

from the University of Illinois. In the preliminary agreement, dated July 5, 1991, and the formal agreement, dated August 14, 1991, Dr. Sreenivasan again advised Keles to consider other graduate schools. Moreover, at his deposition, Keles conceded that neither the research assistant position nor the preliminary agreement constituted an admission to graduate school. Keles Dep. at 59, 81–82, 84. More importantly, the graduate school rejected Keles on three separate occasions and declined to consider his fourth application. In the face of these facts, no rational fact finder could conclude that he was admitted to the graduate school pursuant to the alleged contract or that any breach of that alleged agreement could have caused him any compensable damage.

Keles argues that, pursuant to the preliminary agreement, Dr. Sreenivasan agreed to administer an area examination before a doctoral committee. Based upon that fact, Keles concludes that he was admitted to the graduate school because that examination is a prerequisite to admission to the graduate school. However, Keles was concededly aware that a student must comply with an educational institution's rules and regulations governing academic requirements to be admitted as a graduate student. *See Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir.1976); *Hammond v. Auburn Univ.*, 669 F.Supp. 1555, 1562 (M.D.Ala.1987), *aff'd without op.*, 858 F.2d 744 (11th Cir.1988), *cert. denied*, 489 U.S. 1017, 109 S.Ct. 1134, 103 L.Ed.2d 195 (1989). Keles admits that he knew of these rules and failed to comply with them. Keles Dep. at 75, 88.

It follows that Keles could not have reasonably believed that he had been admitted to a doctoral program pursuant to the alleged agreement without complying with the university's requirements. Therefore, the contract claim is so lacking in plausibility that no reasonable fact finder could reach a verdict for Keles on this contract claim. This is especially true since there is no evidence that defendants acted arbitrarily, capriciously, irrationally, in bad faith or contrary to law. *See Garg v. Albert Einstein*

*College of Medicine of Yeshiva Univ.*, 747 F.Supp. 231, 236 (S.D.N.Y.1990).

B. *The Fraudulent Inducement Claim*

■ Keles also claims that Dr. Sreenivasan fraudulently induced him to work in the laboratory by maintaining that Keles was admitted to the graduate school, and that he would administer an area examination before a doctoral committee. Verified Complaint ¶¶ 64–83. To establish fraud under New York law, Keles must demonstrate (1) a material, false representation; (2) an intent to defraud; (3) reasonable reliance; and (4) damages. *See Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987). Moreover, Keles must establish each of these elements by clear and convincing evidence. *See Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 971 (2d Cir.1987). Finally, a simple breach of contract does not constitute fraud. *See Drexel Burnham Lambert, Inc. v. Saxony Heights Realty Assoc.*, 777 F.Supp. 228, 235 (S.D.N.Y.1991).

■ In this case, there is no evidence of fraud. Dr. Sreenivasan merely agreed to recommend Keles to the graduate school at Yale, and only "if things work[ed] out well." Moreover, Dr. Sreenivasan advised Keles to accept the offer from the University of Illinois and to pursue other opportunities. At the same time, Yale repeatedly rejected applications for admission by Keles. As noted, Keles has conceded that neither the research assistant position nor the preliminary agreement constituted admission to graduate school.

■ Moreover, there was no reliance in this case, let alone reasonable reliance. The alleged reliance occurred in September 1990 when Keles began working as a research assistant. However, the representation upon which Keles claims he relied upon in choosing to work in the laboratory occurred in July 1991, when he and Dr. Sreenivasan negotiated the preliminary agreement. Fraud premised upon misrepresentations that occur after detrimental reliance has occurred do not permit a rational inference of reasonable reliance. *See Morin v. Trupin*, 711 F.Supp.

97, 104 (S.D.N.Y.1989).[7]

### C. *The Remaining Contract Claim*

Lastly, Keles claims that defendants are liable in contract because they failed to pay his $1,100 monthly salary from September 1990 through September 1991 and from February 1992 through May 1992. Verified Complaint ¶¶ 11–31. In this remaining cause of action, Keles seeks to recover compensatory damages, punitive damages, as well as costs and interest.

■ District courts possess diversity jurisdiction where the amount "in controversy exceeds the sum or value of $50,000, exclusive of interest or costs." 28 U.S.C. § 1332. Keles claims only $13,500 in compensatory damages on this contract claim, and neither costs nor interest can properly augment that figure for purposes of meeting the requisite jurisdictional amount. *See Salkind v. Trafalgar Hospital*, 322 F.2d 947, 947 (2d Cir.1963). In any event, even assuming that costs and interest could be considered for that purpose, his claim still would not satisfy the jurisdictional amount.

■ Nor can Keles's claim for punitive damages justify retention of jurisdiction by the Court. Where, as here, punitive damages are premised upon a private breach of contract, even a breach committed wilfully and without justification does not warrant the imposition of punitive damages. *See Cross v. Zyburo*, 185 A.D.2d 967, 587 N.Y.S.2d 670, 671 (2d Dep't 1992) (citing *J.G.S., Inc. v. Lifetime Cutlery Corp.*, 87 A.D.2d 810, 448 N.Y.S.2d 780, 781 (2d Dep't 1982)); *see also Halpin v. Prudential Ins. Co.*, 48 N.Y.2d 906, 425 N.Y.S.2d 48, 49, 401 N.E.2d 171, 172 (1979). A plaintiff is required to plead a factual basis for inferring morally culpable conduct, which Keles has failed to do. Moreover, it is clear from Keles's deposition and the documentary evidence that there is no conceivable factual basis for an award of punitive damages.

It follows that it appears to a "legal certainty" that the remaining contract claim does not meet the jurisdictional amount for diversity jurisdiction, *St. Paul Mercury Indem. Corp. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), and that the remaining breach of contract claim must be dismissed for lack of subject matter jurisdiction. *See, e.g., Ringsby Truck Lines, Inc. v. Beardsley*, 331 F.2d 14, 18 (8th Cir.1964).

### D. *Rule 11 Sanctions*

Not surprisingly, defendants move for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"). Prior to its amendment in December 1993, Rule 11 provided in relevant part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading ... that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it ... an appropriate sanction....

Fed.R.Civ.P. 11 (1992). The rule, which is designed to deter baseless filings and curb abusive litigation, *see Business Guides, Inc. v. Chromatic Comm. Enters., Inc.*, 498 U.S. 533, 553, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991), imposes an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of claims, *see Eastway Constr. Corp. v. New York*, 762 F.2d 243, 253 (2d Cir.1985).

An amendment, effective December 1, 1993, modified Rule 11 in several respects. Most significantly, under the old Rule 11, the imposition of sanctions was mandatory upon a finding of sanctionable conduct. *See Eastway*, 762 F.2d at 254 n. 7. Under the amended Rule 11, however, the district court is now afforded discretion in determining whether sanctions are appropriate. Moreover, a district court is permitted to exercise that expanded discretion retroactively in de-

---

7. For the same reasons, the fourth cause of action, which alleges a grievous wrong, must also be dismissed.

ciding whether to impose sanctions. *See Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir. 1994); *Sussman v. Bank of Israel,* 154 F.R.D. 68, 71 n. 1 (S.D.N.Y.1994). However, in determining whether any particular conduct is sanctionable, the Court must apply the standards of the old Rule 11. *See Knipe,* 19 F.3d at 78; *Sussman,* 154 F.R.D. at 71 n. 1.

■ In this case, there is no question that the second, third and fourth causes of action are frivolous. Despite three rejections by the graduate school, the second cause of action alleges that defendants breached an educational contract. Despite these rejections and repeated advice to pursue other opportunities, the third cause of action alleges that defendants fraudulently induced Keles to work in the laboratory. The fourth cause of action, which alleges a grievous wrong, is based upon the same underlying facts and is equally groundless. In short, it is clear that these causes of action have "absolutely no chance of success under the existing precedents, and ... no reasonable argument can be advanced to extend, modify or reverse the law as it stands." *Rodick v. City of Schenectady,* 1 F.3d 1341, 1350 (2d Cir.1993) (citations omitted).

The Court repeatedly warned counsel for Keles, Morgan Kennedy, that Rule 11 sanctions may be warranted in this case. However, Kennedy chose to ignore such admonition, thereby necessitating costly motion practice and wasting sparse judicial resources.[8] Moreover, Kennedy was aware that Keles has sued every American college or university that he has attended, including Manhattan College, New York University and Yale. *See, e.g., Keles v. New York Univ.,* 1994 WL 119525 (S.D.N.Y.1994) (involving Keles and Kennedy); *see also S.R. Mercantile Corp. v. Maloney,* 909 F.2d 79 (2d Cir.1990) (involving sanctioning of Kennedy).

Therefore, based upon the entire record herein, the Court concludes that a monetary sanction to cover defendants' costs and attorneys' fees is appropriate. In its discretion, the Court imposes such sanctions upon Morgan Kennedy, counsel for plaintiff. Defendants are hereby directed to submit an affidavit, detailing costs and attorneys' fees, and a proposed order within the next thirty days.[9]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment shall be and hereby is granted in part, the remaining contract claim is dismissed for lack of subject matter jurisdiction and defendants' motion for sanctions is granted. The Clerk of the Court is directed to close the above-captioned action.

It is **SO ORDERED.**

---

8. The fact that the earlier motion for summary judgment was denied without prejudice does not change the outcome here. *See, e.g., Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1473 (2d Cir.1988). The earlier motion was denied out of an abundance of caution so that the Court could have the benefit of Keles's deposition before denying him access to a trial.

9. In view of some recent filings, it appears that Kennedy may no longer represent Keles. That fact does not and should not impact the Court's decision to award sanctions.