Aragie WOLDE–MESKEL, Plaintiff,

v.

**VOCATIONAL INSTRUCTION PROJECT COMMUNITY SERVICES, INC., Estate of Robert Banome, Deceased, Sudhir Patel, Defendants.**

No. 93 Civ. 6515 (LMM).

United States District Court, S.D. New York.

Jan. 9, 1997.

Aragie Wolde–Meskel, South Orange, NJ, Pro Se.

Robert Nayberg, Law Offices of Martin H. Scher, Carle Place, NY, for Defendants Vocational Instruction Project and Sudhir Patel.

Richard Agins, Agins Siegel & Bernstein L.L.P., New York City, for Defendant Estate of Robert Banome.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

In this case, pro se plaintiff, Aragie Wolde–Meskel ("Meskel"), seeks to recover damages for defendants' alleged breach of an employment contract. Defendants, Vocational Instruction Project Community Services, Inc. ("VIPCS"),[1] the Estate of Robert Banome, and Sudhir Patel, move for summary judgment dismissing plaintiff's second amended complaint. In addition, VIPCS moves for default judgment, or in the alternative for summary judgment, on its counterclaim for conversion. For the reasons set forth below, defendants' motions for summary judgment dismissing plaintiff's breach of contract claim are granted. The Court declines to exercise jurisdiction over the parties' remaining claims.

### I. Factual Background

Meskel worked as VIPCS's assistant fiscal director from January 13, 1986, until his termination on September 17, 1991.[2] VIPCS, funded primarily by the New York State Office of Alcoholism and Substance Abuse Services, formerly known as the Division of Substance Abuse Services ("DSAS"), provided services to current and former substance abusers. Prior to his employment at VIPCS, Meskel worked for Lower East Side Service Center ("ESSC"), another DSAS funded organization. (Meskel dep. 19–20.) DSAS set forth policy guidelines for the organizations which it funded, including

---

**1.** The Clerk of the Court, pursuant to VIPCS's motion, is directed to change the caption in this action to reflect a change in the name of the corporate defendant from "Tremont Commonwealth Council Vocational Instruction Project, Inc." to "Vocational Instruction Project Community Services, Inc." Although Meskel worked for the corporation under its former name, for the sake of consistency and clarity, the Memorandum will refer to only the latter name.

**2.** Because the case is before the Court on defendants' motions for summary judgment, the Court must view the facts in the light most favorable to Meskel, the nonmoving party. In opposition to defendants' motion, Meskel has submitted a conclusory affidavit with almost no relevant attachments. In contrast, defendants have submitted a complete transcript of Meskel's deposition with relevant deposition exhibits and other attachments. Because Meskel is proceeding pro se, the Court has liberally construed all the documents presently before it in Meskel's favor.

VIPCS. From his employment at ESSC, Meskel became familiar with the DSAS guidelines before he began working for VIPCS.

Prior to being hired by VIPCS, Meskel was interviewed by Ronald Sookdar, VIPCS's then Administrative Director. During that interview, Sookdar showed Meskel VIPCS's personnel manual. (Meskel dep. 31–32.) Sookdar assured Meskel during the interview that Meskel would not be fired without "just cause." (Meskel dep. 119–20.) After being interviewed by Sookdar and the then Executive Director, Robert Banome, Meskel was offered the job. Meskel did not actually receive a copy of the personnel manual until after being hired.

Viewing Meskel's claims liberally, he contends that VIPCS could not fire him without just cause, and that, in any event, VIPCS failed to follow required procedures prior to terminating his employment. Meskel asks for back pay and front pay. Meskel also claims that he was denied $1,538.40 in vacation pay, two weeks of severance pay, and $8,250.00 in employer contributions to his retirement annuity account. (Second Am. Compl., at 4.) Defendants claim that Meskel was an at-will employee, that Meskel was terminated for unsatisfactory performance in any event, and that VIPCS followed all procedures that it was required to follow, if any. VIPCS also claims that Meskel converted $3,510.00 by issuing himself nine payroll checks for $390.00 more than that to which he was entitled.

## II. Discussion

### A. Standard of Review

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All facts, inferences, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[T]he mere existence of *some* alleged factual dispute ... will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B. Meskel Was An At–Will Employee

Under New York law, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *De Petris v. Union Settlement Ass'n, Inc.*, 86 N.Y.2d 406, 410, 657 N.E.2d 269, 271, 633 N.Y.S.2d 274, 276 (1995). In *De Petris*, the Court of Appeals' most recent expatiation on the subject, the court held that an employee may recover for breach of an employment contract, if he or she establishes "that the employer made the employee aware of its express written policy limiting its right of discharge and that the employee detrimentally relied on that policy in accepting the employment." *Id.* Meskel has failed to demonstrate that there is a genuine issue of material fact as to either element.

During his deposition and in his opposition papers, Meskel has, at various times, identified a number of disparate provisions in VIPCS's personnel manual and the DSAS manual on policy and procedure to support his claim. Meskel concedes that none of the provisions upon which he relies expressly state that VIPCS's right to discharge its employees is limited to discharge for cause. Instead, Meskel apparently claims that the various policies in the aggregate imply such a limitation. (Meskel dep. 168.) Under *De Petris*, which requires an "express written policy," Meskel's claim is insufficient. *Id.*

In any event, Meskel has failed to show that the alleged limitation on VIPCS's right to discharge employees can reasonably be implied from the provisions upon which he relies. Significantly, the disjointed provisions upon which Meskel relies do not comprise any uniform scheme or method concerning employee termination. Rather, they

appear to set forth limited information, policies, or practices under specific situations.

■ For example, one of the provisions Meskel cites establishes a ninety-day probationary period for new employees during which time employees "may be discharged at any time without recourse" and may not "utilize vacation, sick or personal time." (Meskel dep. Ex. E, at 1.)[3] The Court does not find, as Meskel does, a negative implication that, after the probationary period, VIPCS limited its common law right to discharge employees without cause. Another provision upon which Meskel relies states that "[a]ny employee guilty of misconduct or unsatisfactory performance will be dismissed." Yet another reads "[a]ny employee who is terminated will be paid for accrued vacation time." (Meskel dep. Ex. E, at 6.) Again, neither these, nor the other provisions upon which Meskel relies, imply any limitation on VIPCS's ability to discharge employees without cause. Thus, Meskel has failed to establish an express written policy upon which he relied.

■ Also, to sustain his claim, Meskel must show that he detrimentally relied on VIPCS's policy. *Tucker v. Battery Park City Parks Corp.*, 642 N.Y.S.2d 891 (1st Dep't 1996); *Murchison v. Comm. Counseling and Mediation Servs., Inc.*, 646 N.Y.S.2d 10 (2d Dep't 1996); *Kelley v. New York State Martin Luther King, Jr. Comm'n and Institute for Nonviolence*, 644 N.Y.S.2d 862 (3d Dep't 1996). Moreover, oral assurances by an employer's management do not alter an otherwise at-will employment relationship. *See Struwe v. R.E. Chapin Mfg. Works, Inc.*, 161 A.D.2d 1179, 555 N.Y.S.2d 970 (4th Dep't 1990) (verbal assurance by employer's president insufficient to alter at-will status); *Diskin v. Consolidated Edison Co.*, 135 A.D.2d 775, 522 N.Y.S.2d 888 (2d Dep't 1987) (verbal assurance by upper management insufficient to alter at-will status). Meskel's conclusory and self-serving assertion that he relied on VIPCS's alleged policy (Meskel dep. 59–60), unsupported by any specific detriment, and his claim that Sookdar orally assured him

that VIPCS would not discharge him without just cause, are insufficient to demonstrate a genuine issue of material fact as to the element of reliance.

Meskel has also failed to demonstrate an issue of material fact as to whether VIPCS was bound to follow or failed to follow any specific procedures prior to terminating Meskel's employment. VIPCS's personnel manual merely contains an informal grievance procedure, which allows employees "who [are] under the impression that she/he [are] unfairly treated" to "request a meeting with the Administrative Director to voice his/her grievance." (Meskel dep. Ex. E, at 5.) Even assuming that VIPCS were obligated to apply this procedure, it does not, as Meskel apparently contends, require particular pretermination review procedures.

### C. The Court Lacks Jurisdiction Over The Remaining Claims

■ Jurisdiction in this case is predicated on diversity of citizenship, which requires the amount in controversy to "exceed[ ] the sum or value of $50,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The amount in controversy is ascertained from the pleadings at the time the action is commenced. *Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir.1996).

■ In a case premised solely on diversity jurisdiction, if one claim is dismissed, the district court may, in its discretion, dismiss the remaining claims if they fail to meet the threshold amount in controversy. *See Keles v. Yale University*, 889 F.Supp. 729, 735 (S.D.N.Y.1995) (dismissing contract claim for failure to plead sufficient amount in controversy after dismissing fraud claim on the merits), *aff'd*, 101 F.3d 108 (2d Cir.1996); *see also Shanaghan v. Cahill*, 58 F.3d 106 (4th Cir.1995) (holding that, under 28 U.S.C. § 1367, once basis for federal diversity jurisdiction disappears, court may decline to exercise supplemental jurisdiction over remaining state law claims).

---

**3.** It appears that VIPCS's personnel manual has been revised at various times over the years. Because Meskel identified Exhibit E to his deposition as the manual upon which he relies, all references are to that manual. (Meskel dep. 158.)

Meskel claims that he was denied $1,538.40 in vacation pay, $8,250.00 in employer contributions to his annuity account, and two weeks of severance pay. Meskel's biweekly gross pay was $1,923.08. At most, the remaining amount in controversy is $11,711.48, far short of the threshold requirement. VIPCS's counterclaim is for $3,510.00. Thus, the Court, in its discretion, declines to exercise jurisdiction over the parties' remaining claims, without prejudice to their reassertion in an appropriate state court.

### III. Conclusion

For the reasons set forth above, defendants' motions for summary judgment dismissing Meskel's breach of contract claim are granted. The Court declines to exercise jurisdiction over the parties' remaining claims. The Clerk is directed to enter judgment of dismissal.

SO ORDERED.