**Pamela BALLARD, Plaintiff,**

v.

**The CHILDREN'S AID SOCIETY et al., Defendants.**

**No. 09 Civ. 5263(VM).**

United States District Court, S.D. New York.

April 28, 2011.

Trevor A. Reid, Trevor A. Reid, P.C., Attorneys and Counselors at Law, Bronx, NY, for Plaintiff.

Aisha M. Barbour, Charles Lee Rombeau, Lucretia C. Clemons, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Pamela Ballard ("Ballard") brought this action against defendants The Children's Aid Society ("CAS"), Jacqueline Francis ("Francis"), and Stephen Douglas ("Douglas") (collectively, "Defendants") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107. By Order dated August 19, 2009, the Court dismissed several of Ballard's claims and directed her to file an amended complaint setting forth any remaining claims. After filing an amended complaint, Ballard subsequently filed a second amended complaint (the "Complaint" or "Compl.") on October 19, 2009. At a conference held with the parties on September 10, 2010, Ballard voluntarily dismissed all of her claims other than her retaliation claim. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56").[1] For the reasons discussed below, Defendants' motion is GRANTED.

## I. *BACKGROUND*

### A. *LOCAL RULE 56.1*

Pursuant to the Local Rules of this District, a party moving for summary judg-

ment pursuant to Rule 56 is required to annex to the notice of motion a separate concise "statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. Local Civ. R. 56.1(a) (emphasis omitted). Local Civil Rule 56.1(b) provides that, in opposing a motion for summary judgment, the nonmovant must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." S.D.N.Y. Local Civ. R. 56.1(b) (emphasis omitted). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Local Civ. R. 56.1(c) (emphasis omitted). Both parties' statements must be "followed by citation to evidence which would be admissible" under Rule 56(e) of the Federal Rules of Civil Procedure. S.D.N.Y. Local Civ. R. 56.1(d).

"Courts in this circuit have not hesitated to deem admitted the facts in a movant's Local Rule 56.1 Statement that have not been controverted by a Local Rule 56.1 statement from the non-moving party." *Gadsden v. Jones Lang Lasalle Ams., Inc.*, 210 F.Supp.2d 430, 438 (S.D.N.Y.2002)

---

1. Despite Ballard's voluntary dismissal of all but her retaliation claim, she appears to assert discrimination and hostile work environment claims in her Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated November 15, 2010. By endorsement dated December 7, 2010, the Court indicated that "[i]nsofar as plaintiff's opposition brief relates to claims not the subject of defendants' motion, the Court will disregard that discussion." Accordingly, this Decision and Order is limited to Ballard's surviving retaliation claim.

(collecting cases); *see also Millus v. D'Angelo,* 224 F.3d 137, 138 (2d Cir.2000) (finding summary judgment "appropriate" in light of non-moving party's failure to comply with Local Rule 56.1(b)). Local Civil Rule 56.1, however, "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported by the record." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir.2001); *see also Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003).

Here, Ballard has failed to submit a response to Defendant's Local Rule 56.1 Statement of Material facts ("Defendants' 56.1 Statement"), dated October 18, 2010. Upon review of the record and Ballard's submissions, the Court finds that Ballard has not proffered any evidence contradicting Defendants' 56.1 Statement. The Court therefore deems those facts enumerated in Defendants' 56.1 Statement admitted pursuant to Local Civil Rule 56.1(c).

## B. *FACTUAL SUMMARY* [2]

On September 1, 2006, Ballard began her employment at CAS. She was previously employed with the Neighborhood Youth and Family Services Program ("NYFS") as a supervisor of both the substance abuse and education unit. Due to funding shortages at NYFS, CAS took over the program and hired Ballard on a provisional basis, subject to satisfactory performance for thirty days. As during her time at NYFS, in addition to supervising the substance abuse specialists, Ballard was required to act as supervisor of CAS's educational unit until an education specialist was hired.

By letter dated September 28, 2006, Francis, who was the Assistant Director of the Persons In Need of Supervision ("PINS") Diversion Program for CAS, and Dominique Nerestan ("Nerestan"), Program Director of PINS, advised Ballard that she had successfully completed the provisional period and recommended the continuation of her employment at CAS. Douglas, the Associate Director of Family and Youth Intervention Service for CAS, by letter dated October 5, 2006, informed Ballard that she would be hired by CAS as a Substance Abuse Supervisor on an at-will basis. Ballard was also advised that she would be classified as HUP2 with a starting salary of $44,907 per year, the same salary she was receiving from NYFS, and that "in case of necessity [she] may be asked to assume assignments and responsibilities other than those described." (Defendants' 56.1 Statement, Ex. I.) Case planners at CAS would refer clients to a substance abuse specialist to determine whether any issues of substance abuse existed that needed further attention. As a substance abuse specialist supervisor, Ballard was required to oversee two substance abuse specialists. Francis supervised Ballard beginning in February of 2007 after Nerestan left CAS.

Beginning in February of 2007, after moving the location of the Bronx PINS program where Ballard worked, CAS decided to renovate its offices. As a result, Ballard was required to share an office with a CAS staff psychiatrist a few days each week.

On April 11, 2007, Ballard received her initial evaluation. The evaluation described her performance as satisfactory, but noted that she had "6 months to improve her performance, productivity and

---

**2.** The factual summary below is thus derived from the Defendants' 56.1 Statement, and any exhibits and declarations attached thereto.

The Court will make no further citations to these sources unless otherwise specified.

accuracy and to sharpen her skills under the CAS model." (Defendants' 56.1 Statement, Ex. K.)

Thereafter, on May 9, 2007, Ballard submitted a memorandum to Francis expressing various concerns regarding (1) not being compensated for her time as acting supervisor of the education unit, (2) the way she was treated by a former supervisor, (3) her dissatisfaction in sharing office space, (4) her limited computer access, and (5) alleged discrimination against her based on her race and former employment at NYFS. Ballard later submitted a revised memorandum dated May 11, 2007 (the "Francis Memo"), which was substantially similar to her previous memorandum except for the deletion of a reference to an incident she had with some of her co-workers. Following a meeting with Ballard to address the concerns raised in the Francis Memo, Francis, Douglas and Janet Sellwood ("Sellwood"), the director of human resources, sent Ballard a memorandum summarizing the points discussed in that meeting. In sum, Francis, Douglas, and Sellwood agreed, among other things, to investigate Ballard's complaints with respect to her salary and acknowledged that an extra office space would be available for her as soon as renovations at CAS were completed. They also discussed ways to address Ballard's concerns regarding the treatment of former NYFS staff members. At the end of June of 2007, Ballard no longer shared an office at CAS, but complained that her newly assigned office was too cold and was difficult to work in because of a broken ventilator.

Meanwhile, CAS adjusted its salaries for all employees. In considering Ballard's appropriate adjustment, CAS reviewed Ballard's current job, current salary, title, and educational background. On June 29, 2007, Douglas sent Ballard a memorandum stating that, as of July 1, 2007, her adjusted salary would be $50,000 and she would

be classified as a HUP5. Later that month, one of the specialists Ballard supervised left CAS. Because there were not enough referrals necessary to sustain a unit composed of two specialists and a supervisor, CAS decided not to refill that position. Ballard continued in her role as a substance abuse specialist, but was no longer responsible for supervising the other specialists.

On November 19, 2007, Ballard filed her First NYSDHR Complaint (the "First NYSDHR Complaint") with the New York State Division of Human Rights ("NYSDHR"). The allegations in the First NYSDHR Complaint were similar to those Ballard made in the Francis Memo. Ballard complained, among other things, that (1) her starting salary prior to receiving a raise was too low and the raise she later received should have been retroactive to her start date; (2) former NYFS staff members were being treated differently from CAS staff members; (3) she was forced to share an office and was later assigned an office that was too cold despite disclosing certain medical issues; and (4) after working in the cold office for several months, she was later moved to another office where there was no telephone or computer access and she had to share the space with one of her co-workers. On December 3, 2007, Ballard filed another complaint (the "Second NYSDHR Complaint") with the NYSDHR alleging that Francis had become hostile toward her after Ballard filed a separate complaint with human resources two weeks prior. Ballard amended the Second NYSDHR Complaint on December 13, 2007, asserting that she had been demoted from a supervisor to a specialist.

Five days later, on December 18, 2007, Ballard received her second evaluation for the period of September 1, 2006 through October 14, 2007 (the "2007 Evaluation").

According to Francis, although the 2007 Evaluation was dated and finalized as of December 18, 2007, the evaluation was actually completed in August of 2007. The 2007 Evaluation rated Ballard as meeting expectations, but noted that she continued to have difficulty adjusting to the CAS model. Following the evaluation, Ballard received a 1.5 percent merit increase and an annual salary of $50,750.00 as of September 1, 2007.

In March of 2008, in an effort to streamline its services, CAS eliminated the Substance Abuse Specialist position and required case planners to directly evaluate whether issues of substance abuse existed among their clients. Rather than terminate the remaining substance abuse specialists, CAS reclassified the Substance Abuse Specialist position to Case Planner/Substance Abuse Specialist. This change occurred throughout CAS's PINS programs in Brooklyn, the Bronx, and Manhattan. Accordingly, Ballard's job title, like that of one her fellow CAS substance abuse specialist's, Carlos Otero, changed to Case Planner/Substance Abuse Specialist. Ballard was provided with an updated job description detailing her new position. Because of her change in position, and in response to Ballard's complaints regarding Francis, Ballard was transferred to CAS's Designated Assessment Services Unit where she was supervised by Theresa Pier ("Pier"). On April 29, 2008, Ballard filed a Third NYSDHR Complaint with the NYSDHR (the "Third NYSDHR Complaint") alleging that the reclassification from Substance Abuse Specialist position to Case Planner/Substance Abuse Specialist was retaliatory.

Approximately one month after transitioning to her new position, on May 14, 2008, Ballard received a verbal warning from Pier. That same day, Pier sent Ballard a memorandum summarizing the verbal warning and advised Ballard that case planners were required to arrive on time, communicate all conflicts/barriers to completion of assignments, and make arrangements to honor all appointments with clients.

In September of 2008, Ballard received her first evaluation as a Case Planner/Substance Abuse Specialist (the "2008 Evaluation"). The 2008 Evaluation, which was completed by Hope Morris ("Morris"), Ballard's new supervisor, indicated some areas where Ballard needed improvement. Ballard disagreed with the 2008 Evaluation and, in response, submitted a rebuttal memorandum, dated October 16, 2008, where she expressed her disagreement with the 2008 Evaluation. Following the 2008 Evaluation, Ballard received a 1.5 percent merit increase in her salary, effective September 1, 2008, which increased her salary to $51,511 per year.

In an effort to assist Ballard with meeting the requirements of her new position, in November of 2008, CAS created a performance improvement plan for Ballard (the "Improvement Plan"). The Improvement Plan required that Ballard (1) develop her writing skills in order to complete more thorough and accurate progress notes and (2) improve her organization and time management skills so as to meet all deadlines. Furthermore, Ballard was required to complete all paperwork within two months for nine of her outstanding cases and comply with all New York City Administration for Children's Services ("ACS") timeframes. Ballard acknowledged at her deposition that these deadlines were instituted by ACS and that CAS could be cited or placed on an improvement plan for non-compliance.

Despite being placed on the Improvement Plan, Ballard did not accomplish the tasks required of her. Thus, on December 15, 2008, Douglas and Morris decided to stop assigning Ballard new cases to allow

her sufficient time to complete her assignments. By February, Ballard still had not completed the paperwork required for her nine long-term cases. She had also been unable to meet the ACS timeframes for thirty-one of her active cases. Her writing skills also did not improve as required by the Improvement Plan. Accordingly, by memorandum dated February 12, 2009, Douglas informed Ballard that because her "performance ha[d] not improved sufficiently as required by the [I]mprovement [P]lan, and that [she had] been unable to perform at the standard CAS (and ACS) requires of PINS staff" her employment at CAS would be terminated effective that day. (Defendants' 56.1 Statement, EX. HH.) A week later, on February 20, 2009, Ballard amended her Third NYSDHR Complaint to assert that her termination from CAS was retaliatory. On June 5, 2009, Ballard filed the instant action against CAS, Francis, and Douglas.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994). The party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; the opposing party cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996).

### B. *RETALIATION CLAIMS PURSUANT TO TITLE VII AND NYSHRL*

■ Retaliation claims under Title VII and NYSHRL [3] are evaluated under the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir.2005). First, Ballard must establish a prima facie case by showing that (1) she participated in a protected activity; (2) Defendants knew of the protected activity; (3) Defendants took an adverse employment action against her; and (4) a causal connection existed between the protected activity and the adverse employment action. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir.2010); *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir.2001). Second, if she does make out a prima facie case, the burden shifts to Defendants to articulate a legitimate, nonre-

---

**3.** The Court notes that the standards for evaluating retaliation claims under Title VII are the same as those applicable to claims under the NYSHRL. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir.1996) ("We consider [plaintiff's] state law claims in tandem with her Title VII claims because New York courts rely on federal law when determining claims under the New York [State] Human Rights Law.").

taliatory reason for their actions. *See id.* Third, Ballard may still prevail if she points to evidence sufficient to permit a reasonable factfinder to conclude that Defendants' stated reason is pretext for unlawful retaliation. *See id.*

Defendants do not dispute that Ballard participated in protected activity when she filed her complaints with the NYSDHR, nor do they argue that they were unaware that she engaged in that protected activity. Thus, the Court's analysis focuses on whether Ballard can establish the third and fourth elements of the prima facie case.

■ To establish an adverse employment action, the third element of the prima facie case, Ballard must demonstrate that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted). An adverse employment action is one that inflicts "significant" rather than a "trivial" harm, which would be "likely 'to deter victims of discrimination from complaining to the [NYSDHR],' the courts, and their employers." *Id.* (*quoting Robinson v. Shell Oil, Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). "For 'a single, acute incident of abuse' to qualify as an adverse employment action, it must be an 'intolerable alteration of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job.'" *Gelin v. Geithner,* No. 06 Civ. 10176, 2009 WL 804144, at *20 (S.D.N.Y. Mar. 26, 2009) (*quoting Mathirampuzha v. Potter,* 548 F.3d 70, 79 (2d Cir.2008)).

■ Ballard may demonstrate causation, the fourth element of the prima facie case, either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant." *Gordon v. NYC Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir.2000). Although a close temporal relationship between a plaintiff's participation in a protected activity and an employer's adverse action is enough by itself to establish a connection, the temporal proximity must be sufficiently close. *See Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

### 1. Statements Regarding Former NYFS Employees

■ In her Complaint, Ballard alleges that by referring to former NYFS employees as "[y]ou people" and "those NYFS people," Defendants were verbally abusive and created a hostile work environment. (Compl. ¶ 17.) Yet, in her deposition, Ballard conceded that such conduct was not retaliatory. (Defendants' 56.1 Statement, Ex. F at 179:8–19.) Accordingly, the Court finds that Ballard's retaliation claim based on Defendants' use of the term "you people" in reference to former NYFS staff fails.

### 2. Salary

■ Equally without merit is Ballard's claim that Defendants retaliated against her by (1) not properly increasing her salary during her employment at CAS, and (2) paying her a lower salary compared to other supervisors at CAS. Ballard first complained about her salary in May of 2007—almost six months *before* she made her First NYSDHR Complaint with the NYSDHR. Because Ballard has not provided sufficient evidence to demonstrate

that the alleged protected activity preceded the adverse employment action, Ballard fails to establish the causal connection required to support her retaliation claim. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir.2001) ("The plaintiff's burden … is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement."). Needless to say, Ballard's salary increases in July of 2007, September of 2007, and September of 2008, contradict Ballard's allegations that her salary was not properly increased during her employment at CAS. Ballard also complained that she was not retroactively compensated for supervising both the substance abuse and education units. Because Ballard had a master's degree, she claimed that the Defendants inappropriately classified her position as a HUP2 rather an HUP5, resulting in lower pay.

The Court finds no merit to Ballard's claims. First, Ballard's starting salary at CAS was the same as her salary at NYFS, where she performed the same duties. Second, from the beginning of her employment at CAS, Ballard was advised that she would be asked to assume other assignments as necessary. Third, Ballard admitted in her deposition that she did not actually know whether she earned less than other supervisors at CAS. (*See* Defendants' 56.1 Statement, Ex. F at 288:22–289:18.) Finally, Ballard's salary was within CAS's range for human service professionals with master's degrees. (*See id.*, Ex. J, CAS Salary Scales 2007.) Nevertheless, in June of 2007, when CAS adjusted its salaries for all employees, Ballard received an increased salary to $50,000 and was reclassified as a HUP5.

For all of these reasons, the Court finds that no reasonable jury could conclude that the salary paid to Ballard was retaliatory.

### 3. *Office Assignments.*

■ Ballard also alleges retaliation based on her office assignments. In particular, she complains that she was forced to share an office with a CAS staff psychiatrist in May of 2007 and that she was subsequently assigned to a cold office in June of 2007. Because all of these actions occurred prior to the filing of her First NYSDHR Complaint, there is no evidence of a causal link between Ballard's protected activity, on the one hand, and Defendants' allegedly retaliatory conduct, on the other. *See Raniola*, 243 F.3d at 624. Although Ballard's assignments to a shared office and to an office without a telephone or computer access did occur after the filing of her First NYSDHR Complaint, the Court is not persuaded that these are the type of actions that would have deterred a reasonable employee from engaging in protected activity. *See Gamble v. Chertoff*, No. 04 Civ. 9410, 2006 WL 3794290, at *8 (S.D.N.Y. Dec. 27, 2006) (instructions to switch cubicles not considered materially adverse). Furthermore, given that CAS was in the midst of renovating its offices and had limited space, a reasonable jury could not conclude that such inconveniences were retaliatory. *See Hicks*, 593 F.3d at 165 (" '[P]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." (citations omitted)). The Court thus finds that these actions do not in themselves rise to the level of materially adverse actions upon which Ballard may base her claim for retaliation. Therefore, the Court finds that no reasonable jury could conclude that Ballard's office assignments were retaliatory.

### 4. *The 2007 Evaluation*

■ Ballard also asserts that her 2007 Evaluation was retaliatory. In response,

CAS contends that, although the 2007 Evaluation was dated and finalized as of December 18, 2007, it was completed in August of 2007 before Ballard filed the First NYSDHR Complaint with the NYSDHR. At her deposition, Francis testified that this delay between completion of the 2007 Evaluation and its finalization was because (1) it was Francis's first evaluation and therefore needed to be reviewed by Francis's own supervisor; and (2) after CAS assumed responsibility for the NYFS program in September of 2007, approximately thirty employees needed to be evaluated at once, which caused delays. Ballard alleges in her Complaint that Defendants intentionally withheld the evaluation to preclude her from receiving a merit increase. Yet it is undisputed that she received a 1.5 percent merit increase as of September 1, 2007. Because Ballard fails to offer any evidence to refute Defendants' explanation for the delay, the Court finds Ballard's conclusory statements that the 2007 Evaluation was an adverse employment action are not sufficient to create a material question of fact *on* this issue. *See Gottlieb*, 84 F.3d at 518.

### 5. *Change in Job Description*

■ Ballard contends that she was demoted from a Substance Abuse Supervisor to a Substance Abuse Specialist and later reclassified as a Case Planner/Substance Abuse Specialist in retaliation for filing her First NYSDHR Complaint. First, Ballard's alleged demotion to a specialist occurred in the summer of 2007, months before Ballard filed her First NYSDHR Complaint, which negates any causal link between the alleged protected activity and the alleged retaliatory conduct. *See Raniola*, 243 F.3d at 624. Second, the Defendants have put forth uncontroverted evidence indicating that after one of the substance abuse specialists left in July of 2007, the unit no longer received a sufficient number of referrals to maintain a unit consisting of two specialists and a supervisor, and thus CAS decided not to replace the substance abuse specialist who departed. As a result, Ballard was asked to continue in her role as substance abuse specialist but was no longer needed as a supervisor.

With respect to Ballard's claim regarding her reclassification, Defendants have provided uncontroverted evidence that such action was not taken in retaliation for filing her complaints with the NYSDHR. Defendants indicated that CAS initiated an effort in March of 2008 to streamline the intake process, tasking case planners with the responsibility of directly assessing whether substance abuse issues existed with their clients. This new initiative required the case planner to perform all such evaluations rather than refer them to another specialist. By reason of this change, CAS eliminated the position of Substance Abuse Specialist throughout the organization. Rather than terminate former Substance Abuse Specialists, however, CAS changed their titles and position to Case Planner/Substance Abuse Specialist. This change did not affect Ballard alone, but was consistent across the PINS programs in Brooklyn, the Bronx and Manhattan. Ballard has not produced any admissible evidence from which a reasonable jury could conclude that Defendants' legitimate, non-discriminatory reasons for changing her job position were pretextual.

### 6. *The Performance Improvement Plan and Termination*

■ Ballard alleges that her placement on the Performance Improvement Plan and ultimate termination was retaliatory. Defendants respond that all of Ballard's evaluations noted that she needed to improve in a number of areas and even received a verbal warning in May of 2008 from her supervisor at the time. Finally,

in November of 2008, Ballard was placed on the Performance Improvement Plan just months after receiving her first evaluation as a Case Planner/Substance Abuse Specialist/ which noted that her knowledge and skills did not satisfy the minimum standards. Defendants assert that in an effort to assist Ballard in meeting the goals set forth in the Performance Improvement Plan, Douglas and Morris stopped assigning her new cases to allow her time to make progress on those required deadlines. However, Ballard was still unable to complete her job duties, including finalizing all overdue paperwork on nine long-term cases and satisfying the ACS time frames for all of her thirty-one cases. As a result, Defendants assert that Ballard was terminated because she was unable to meet the basic requirements of her job.

Apart from Ballard's conclusory statements set forth in her own affidavit and the Complaint that Defendants purposely set her up for failure by assigning her tasks that were impossible to accomplish within the set time frames, Ballard offers no evidence supported by the record to advance such contentions. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 618 F.Supp.2d 280, 304 n. 24 (S.D.N.Y.2009) (finding that a "declaration, without citing any admissible evidence, fails to create a question of material fact, and it will not defeat summary judgment."). Defendants have stated legitimate non-discriminatory, and uncontroverted, reasons for Ballard's termination, namely, Ballard's failure to meet specific deadlines and poor performance. *See Holcomb v. Iona College,* 521 F.3d 130, 137 (2d Cir.2008) ("[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). Ballard has not offered any evidence from which a rational jury could reasonably conclude that Defendants' stated reasons for her

placement on the Improvement Plan and Termination were pretextual.

### 7. *Other Miscellaneous Claims*

Ballard also alleges that the following, among other things, constitute evidence of retaliation: (1) that in the beginning of 2007, before Ballard filed her First NYSDHR Complaint, Francis assigned her unreasonable tasks; (2) CAS did not provide her with a job description in 2008; and (3) Francis told Ballard in January of 2008 that she could not earn any compensatory time for overtime. The Court has considered these and Ballard's other remaining allegations of retaliatory conduct and is not persuaded that a rational jury could reasonably find in favor of Ballard on these claims.

### C. *RETALIATION CLAIMS PURSUANT TO NYCHRL*

 Ballard also alleges retaliation in violation of NYCHRL. After the Local Civil Rights Restoration Act of 2005, claims brought under the NYCHRL must be evaluated independently from counterpart claims brought under Title VII and NYSHRL. *See Kolenovic v. ABM Indus. Inc.*, 361 Fed.Appx. 246, 247–48 (2nd Cir. 2010); *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 31 (1st Dep't 2009). To determine whether a plaintiff has established a prima facie case of retaliation under the NYCHRL, a court must inquire whether

> a jury could reasonably conclude from the evidence that the complained-of conduct by the employer was ... reasonably likely to deter a person from engaging in protected activity, without taking account of whether the employer's conduct was sufficiently deterrent so as to be material.

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir.2010) (internal citations and quotation marks omit-

ted). Although claims under the NYCHRL are "more liberally construed than claims under Title VII and the NY[S]HRL, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Deshpande v. Medisys Health Network, Inc.,* No. 07 Civ. 375, 2010 WL 1539745, at \*22 (E.D.N.Y. Apr. 16, 2010) (internal citations and quotation marks omitted) (*citing Julius v. Dep't of Human Res. Admin.,* No. 08 Civ. 3091, 2010 WL 1253163, at \*5 (S.D.N.Y. Mar. 24, 2010)).

Defendants contend that many of the actions that Ballard argues are retaliatory occurred prior to the filing of her First NYSDHR Complaint and therefore no causal link exists. Furthermore, even if Ballard established a prima facie case of retaliation, Defendants have set forth legitimate, non-discriminatory reasons for their actions and Ballard has not provided any admissible evidence from which a rational jury could reasonably conclude that Defendants' proffered explanations were pretextual.

██ The Court notes that Ballard has failed to respond to Defendants' arguments described above regarding her claim under the NYCHRL. Accordingly, the Court finds that Ballard has abandoned her NYCHRL claim. *See Di Giovanna v. Beth Israel Med. Ctr.,* 651 F.Supp.2d 193, 208 (S.D.N.Y.2009) (finding that plaintiff's failure to respond to arguments asserted in a summary judgment motion regarding why certain claims should be dismissed amounts to abandonment of claims). In any event, the Court finds that the record sufficiently supports the Defendants' requested relief.

### D. *CLAIMS AGAINST FRANCIS AND DOUGLAS*

██ Similar to her claim under the NYCHRL, Ballard has failed to respond to individual defendants Francis's and Douglas's (the "Individual Defendants") motion for summary judgment. Nevertheless, upon review of the record, the Court finds that Ballard has not established any genuine issue of material fact to suggest that Francis or Douglas had the ability to hire or fire Ballard on their own, which is a prerequisite for holding a corporate employee liable under the NYSHRL and NYCHRL. *See Stevens v. New York,* 691 F.Supp.2d 392, 401 (S.D.N.Y.2009); *Harrison v. Indosuez,* 6 F.Supp.2d 224, 232–33 (S.D.N.Y.1998). Ballard's claims against the Individual Defendants are therefore dismissed.

### III. *ORDER*

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 51) of defendants The Children's Aid Society, Jacqueline Francis, and Stephen Douglas for summary judgment is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**